IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THUY VAN VO,                          :          CIVIL ACTION
      Plaintiff                   :
                                             :
vs.                                   :          NO. 13-3105
                                             :
TERRANCE P. MOORE, Warden of          :
Bucks County Correctional Facility,   :
      Defendant                   :

**M E M O R A N D U M**

STENGEL, J.                                        June  21, 2016

        Thuy Van Vo, an inmate currently housed at the Greene State Correctional Institution at Waynesburg, Pennsylvania, brought this action *pro se* against the Warden of Bucks County Correctional Facility, and several other employees[1] of the facility alleging a violation of his constitutional due process rights pursuant to 42 U.S.C. § 1983.  Mr. Vo claims that while a pretrial detainee at Bucks County Correctional Facility between November 12, 2010 and June 1, 2011, he was housed first in the Mental Health Unit ("MHU") for a week, then transferred to the Restricted Housing Unit ("RHU") for seven months, all without an explanation or a hearing.  The parties have filed cross-motions for summary judgment.  For the following reasons, I will grant the defendant's motion, deny the plaintiff's motion, and enter judgment on behalf of Defendant Moore.

---

[1] The original complaint in this action was assigned to the docket of the Honorable William H. Yohn, who dismissed all defendants with the exception of Terrance P. Moore, the Warden of Bucks County Correctional Facility.  See Document #46.  Judge Yohn also dismissed Mr. Vo's claim for cruel and unusual punishment in violation of the Eighth Amendment as untimely.  See Document #47.  Upon Judge Yohn's retirement, the case was reassigned to my docket.

## I. BACKGROUND

The second amended complaint indicates that on November 12, 2010, Mr. Vo arrived at Bucks County Correctional Facility as a pretrial detainee. Upon arrival at the facility, Mr. Vo was immediately placed in the "mental health unit, absent infraction and due process of law." It also alleges that he was stripped of all clothing including his underclothing, and assigned a jumpsuit. Mr. Vo was also denied sheets and a blanket. The lights in his cell remained lit for twenty-four hours a day. He was also allegedly not given an inmate handbook.

Mr. Vo further alleges that at no time before he was placed in his cell at the MHU was he evaluated by a mental health practitioner. One week later, however, he was evaluated by Dr. Abrams, a physician and former defendant in this action. Dr. Abrams released Mr. Vo from the mental health unit, but immediately placed him into the RHU, "absent an infraction and without a due process hearing." Mr. Vo further complains that even after being sent to the RHU, he was still not provided any explanation for being confined there. In fact, he was housed in the RHU for a period of seven months without a hearing.

During those seven months, Mr. Vo allegedly made repeated requests to learn why he was being confined in the RHU, but those requests went unaddressed. He further alleges that he could not file a formal grievance because he was not informed of the procedure. He is of Vietnamese descent and has alleged difficulty reading and understanding the English language.

2

Several important details were missing from the second amended complaint but were provided by the defendant in his motion for summary judgment. These details provide background for Mr. Vo's arrest and ultimate placement at Bucks County Correctional Facility.

On November 8, 2010, Mr. Vo's friend and apparent business associate, An-Hnan Thi Huynh, was found strangled to death in her nail salon located in Upper Southampton, Pennsylvania. See Exh. #2 of Def. Mot. for S.J. Upon investigation, the police were led to Mr. Vo, whom they found in his Philadelphia apartment, in possession of the victim's stolen property. Mr. Vo had just attempted suicide by ingesting pills and cough syrup. Id. He was taken to Einstein Hospital for treatment, then arraigned under a warrant for arrest for criminal homicide, theft by unlawful taking, and receiving stolen property. Id.

After arraignment, Mr. Vo was transported to the Bucks County Correctional Facility, where he was placed in the MHU under "acute watch," as a potential suicide, the standard administrative classification of prisoners with suicidal ideation. See Exh. #16 of Def. Mot. for S.J. On November 13, 2010, he submitted to a standard intake interview at which he confirmed his continuing consideration of suicide. Id.

After two weeks of constant monitoring against potential suicide, Mr. Vo was moved out of the MHU to the RHU, and placed on regular, as opposed to acute, mental health watch. RHU is a less restrictive administrative classification for prisoners either being disciplined for infractions, or having known violent propensities, or who present a potential danger to themselves, other inmates, staff, or the security of the institution. On May 31, 2011, Mr. Vo was transferred to the general population while awaiting trial.

3

On December 13, 2011, Mr. Vo was convicted of murder following a jury trial. His classification then was changed to convicted murderer, and, therefore, a potential danger with history of suicidal ideation.  <u>See</u> Exh. #10 of Def. Mot. for S.J.  He administratively was transferred back to the RHU, pending transfer to the state penitentiary system.  He was sentenced to life imprisonment on February 2, 2012, then transferred to the state system on February 19, 2012.

## II.  STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  <u>Id.</u>

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial <u>Celotex</u> burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  <u>Id.</u> at 325.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  citing to particular parts of materials in the record, including depositions, documents, electronically stored

4

information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials.  FED. R. CIV. P. 56(c)(1)(A).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

Mr. Vo claims that Defendant Moore knew or was deliberately indifferent to the fact that Mr. Vo was immediately confined in the MHU, subjected to cruel and unusual punishment upon reception at Bucks County Correctional Facility, without any due process.  He also claims that Defendant Moore knew or was deliberately indifferent to the fact that Mr. Vo was removed from the MHU and immediately placed in the RHU, "without any due process and definitive reasons given for the initial placement and continued confinement for seven months without a notice and/or hearing."  Finally, he

alleges that as a direct and proximate result of Defendant Moore's acts and omissions,

Mr. Vo's Fourteenth Amendment rights were violated.  See Second Am.Compl. ¶ 37.

Under 42 U.S.C. § 1983, a private party may recover in an action against any

person acting under the color of state law who deprives the party of his or her

constitutional rights.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia subjects, or causes to be
> subjected, any citizen of the United States or other person
> . . . to the deprivation of any rights, privileges or
> immunities secured by the Constitution and law, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must

demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the

constitutional deprivation was committed by a person acting under the color of state law.

West v. Atkins, 487 U.S. 42, 48 (1988).  Section 1983 does not by itself confer

substantive rights, but instead provides a remedy for redress when a constitutionally

protected right has been violated.  Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

To determine if a person was acting under the color of state law, the court must ask

whether the plaintiff's deprivation was "caused by the exercise of some right or privilege

created by the State" and whether the defendant "may fairly be said to be a state actor."

Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

Here, the defendants argue that summary judgment is appropriate because there is

no genuine issue of fact disputing that Mr. Vo failed to exhaust requisite available

6

administrative remedies for the claims he asserts in his second amended complaint.  I

must agree.

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust a

correctional facility's administrative remedies before he can initiate a Section 1983 action

in federal court.  The PLRA states:

> No action shall be brought with respect to prison
> conditions under Section 1979 of the Revised Statutes of
> the United States (42 U.S.C. § 1983) or any other federal
> law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as
> are available have been exhausted.

42 U.S.C. § 1997e(a).  The PLRA applies to any claim that arises in the prison setting.

See Porter v. Nussle, 534 U.S. 516, 532 (2002) (the PLRA's exhaustion requirement

applies to all inmate suits about prison life, whether they involve general circumstances

or particular episodes, and whether they allege excessive force or some other wrong).

Furthermore, Congress "has provided in [the PLRA] that an inmate must exhaust

[administrative remedies] irrespective of the forms of relief sought and offered through

administrative avenues."  Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  The Third

Circuit has held that the exhaustion requirement is absolute, absent circumstances where

no administrative remedy is available.  See Spruill v. Gillis, 372 F.3d 218, 227-228 (3d

Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000).

Compliance with the PLRA's exhaustion requirement is mandatory, and is not

excused even if the procedures do not permit the same relief as that which can be

awarded in federal court.  Woodford v. Ngo, 548 U.S. 81, 88 (2006).  Moreover, the

prisoner must properly exhaust, meaning that he "must complete the administrative review process in accordance with the applicable procedural rules," thereby securing a disposition on the merits.  Id. at 88, 93; see also Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (a prisoner must pursue his claim to the highest level of the administrative process before filing suit).

Here, as of June 1, 2010, Bucks County has maintained a grievance procedure published in the Inmate Handbook given to all prisoners at reception to the facility.[2]  It provides a grievance procedure "establish(ing) an administrative remedy through which an inmate may seek a formal review of a complaint relating to any aspect of their confinement."  See Exh. #12 of Def. Mot. for S.J.  The defendant attached to his motion for summary judgment a copy of the handbook.

The first step in the grievance procedure is known as Informal Resolution, where an inmate "shall, informally, through verbal or written communication, present his/her complaint to the staff.  An inmate must first attempt informal resolution before filing a formal grievance."  Id. at 21.  The record reflects that, on December 14, 2011, Mr. Vo

---

[2]  Mr. Vo claims that he did not receive a copy of the handbook at reception, which is accepted as true for purposes of this motion.  However, the record reflects that he knew of a grievance procedure while at the facility, and certainly by the time he filed this action.  His allegation of difficulty with the English language as an excuse for not knowing about the grievance procedure is belied by the sworn affidavit of Eric Pawling, a case worker at the Bucks County Correctional Facility.  See Exh. #16 of Def. Mot. for S.J.  Mr. Pawling conducted the initial interview of Mr. Vo upon his reception, and attests that he asked Mr. Vo each of the necessary questions and received from him appropriate answers.  He further attests that, "While Mr. Vo exhibited an Asian accent during the interview, I attest that we had no difficulty communicating with each other in English during the interview.  Id.  Assistant Warden Lil Budd also submitted a sworn affidavit wherein she indicated, "Throughout his incarceration, I had several occasions to speak with Mr. Vo and, although he had an accent, never had any problem with his communication." See Exh. #17 of Def. Mot. for S.J.

verbally complained to a staff member about claimed restrictions imposed in the RHU, saying he would follow up with Assistant Warden Lil Budd.  See Exh. #9 of Def. Mot. for S.J at 2.  He did so by filing an informal request on an "Inmate Request Form" for that purpose, fulfilling the first step of the grievance procedure.  See Exh. #7 of Def. Mot. for S.J.  Although he followed the informal resolution process, Mr. Vo failed to complete the grievance procedure because he did not proceed through the remaining stages of filing a formal grievance.

The second step in the grievance procedure is known as the Written Grievance. An inmate is required to file a grievance form with the Director or his designee, within ten calendar days of the incident being grieved.  See Exh. #9 of Def. Mot. for S.J. at 21-22.  Instead, on December 27, 2011, Mr. Vo filed a second informal complaint with Mrs. Budd, now claiming housing discrimination based on his Asian race.  See Exh. #8 of Def. Mot. for S.J.  The record reflects that Mrs. Budd denied both informal grievances, advising Mr. Vo that his housing classification was based upon his conviction for murder, not his race, and that he had access to his attorney, weekly visits, and use of the phone.

The next required step in the grievance procedure is the filing of an appeal to the Director of Corrections.  If that appeal is denied, the inmate may appeal to the Bucks County Prison Oversight Board.  Mr. Vo did not pursue these procedures between December 27, 2011 and his transfer to the state penitentiary system on January 19, 2012. He further did not attempt to pursue the grievance procedure after his transfer.  Mr. Vo's pleadings reflect his admission that he never filed a formal grievance.

Because Mr. Vo did not exhaust the administrative remedies available to him pertaining to inmate grievances, he failed to preserve his due process claims for judicial review.  Mr. Vo has submitted no evidence controverting the material facts presented by the defendant establishing that Mr. Vo did not exhaust his administrative remedies. Accordingly, I will grant the defendant's motion for summary judgment and deny Mr. Vo's motion for summary judgment.

An appropriate Order follows.